**Commonwealth v. Hernandez**

*R. Scott Cramer,* for Commonwealth.
*William C. Costopoulos,* for defendant.

QUIGLEY, *P.J.,* March 13, 1983 — On February 5, 1983, in Rye Township, Perry County, Pa., two automobiles collided on Route 850, causing the death of Kathy I. Kenee, operator of one of the vehicles. The other operator, Rigoberto Hernandez, defendant in this case, was charged by the Pennsylvania State Police with involuntary manslaughter (18 Pa.C.S. §2504), homicide by vehicle while under the influence (75 Pa.C.S.A. §3735(a) ), and driving under the influence of alcohol (75 Pa.C.S.A. §3731 (a)(1) & (4) ).

By pre-trial application, defendant has raised various issues which are now before us for decision. We are to understand that we have before us the first challenge to the constitutionality of what has become known as Pennsylvania's "New Drunk Driving Law" in reality, amendments to the Motor Vehicle Code of 1977 (Act of June 17, 1976, P.L. 162 as amended).

Our decision in this case will not put to rest finally the substantial issues raised by the enactment of

this legislation, that being eventually the task of this state's highest court.

A case such as this is difficult for most to understand. Many see a serious social problem which the legislature has attempted to address by reasonable and overdue action, with attempts to challenge being viewed as arrogant or at least irrelevant. Others see the legislation as constituting a threat to civil liberties. It is always difficult to separate social issues from legal or constitutional issues.

The public awareness of the problem of driving under the influence, long overdue and laudable, is substantial. The attitudes of society can, do and should influence government. That influence is sometimes expressed in the enactment of legislation by a legislature responding to the will of the people. In our democracy the will of the people expressed through legislation is limited only by the Constitutions of the United States and of this Commonwealth. The role of the courts in this context, simply stated, is to pass on the constitutionality of the legislative action before us.

## CONSTITUTIONALITY OF MANDATORY SENTENCING PROVISION

A conviction under Section 3735(a) requires the imposition of a mandatory minimum sentence of three years, while a conviction under Section 3731 requires imprisonment of 48 hours for a first offense and up to a minimum of one year for the third or more offenses. A first offender may avoid the mandatory 48 hour sentence by electing, if he is eligible, to participate in an accelerated rehabilitative disposition program.

Defense contends that the mandatory sentencing provisions are unconstitutional because they violate the separation of powers doctrine, constitute cruel

and unusual punishment, violate due process, vest the prosecutor with unreviewable discretion, and in the case of first offenders under Section 3731 (which allows the ARD election), impose a penalty for exercising one's right to a jury trial.

The legitimacy of the concept of legislatively directed mandatory sentences have been questioned before in the courts of this state and country and has uniformly withstood challenge on constitutional grounds.

On the equal protection issue

". . .the legislature may distinquish the ills of society which require a criminal sanction, and may punish them appropriately, and thereby not violate constitutional limitations." People v. Broadline, 37 New York 2d 100 (1975) annotated in 81 A.L.R. 2d 1192 at 1202.

The fact that sentencing has become discretionary with the courts does not alter the fact that the judiciary's authority to sentence comes from the legislature which always had the power to ". . .alter the penal regime 'even to a substantial degree. . ." State v. King, (1974 Me.) 330 A.2d 124, 81 A.L.R. 2d 1186. This case, speaking to the due process issue, is illustrative of the controlling proposition that appropriate mandatory sentencing rules do not violate due process.

It seems to us that a stiff mandatory sentence might at some point not be rationally related to a proper legislative purpose with the result that there might be sufficient disparity between the sentence and the harm to be avoided, so that the result might be deemed cruel. However, it seems clear that punishment is in the purview of the legislature, not the court.

In summary, if legislative action design to address a social ill is reasonable it will not be held to violate any of the mentioned constitutional prohibitions.

While we are sure arguments will be made on the issue, we don't see any infirmities in the mandatory sentencing provisions of this act. We view it as a reasonable, rational, appropraite legislative attempt to address a most serious social problem.

We do not see a constitutional problem in the issue of the prosecutor's discretion. A district attorney, especially since the abolition of the grand jury, is vested with considerable discretion. That discretion is ultimately reviewable at trial. A person charged is either guilty or not guilty. The risk that someone will be charged who should not be charged is not of serious concern because of the safeguard of a trial. The risk that someone will not be charged who should be charged is not greater or lesser now than it was before this Act.

It is true that to exact a penalty for the exercise of a right is an unconstitutional practice. Commonwealth v. Bethea, 475 Pa. Super. 571, 379 A.2d 102 (1977). And it is true that one may be tempted to opt for the security of ARD rather than risk a sentence after electing a trial. However, if successful at trial, defendant goes away unfettered. His right to a trial is clear. He should think about the strength of his case and the Commonwealth's case and the fact that he might well receive more than 48 hours before he decides whether or not to proceed to trial. He should think about whether he has a problem that a program (such as ARD) might be of help to him. While this issue is of concern, we think the section has a rational basis and is sustainable.

## PER SE .10 RULE

Section 3731(a)(4) permits a conviction if the driver's blood alcohol content is .10 or more without additional evidence. It is suggested by the defense that this provision is unconstitutional because it violates due process, causes a shift or lightening of the burden of proof and it is vague and uncertain.

A "per se" rule is not novel. The Motor Vehicle Code for years has directed that no prosecution take place if blood alcohol content is less than .05. Other states have provisions similar to Pennsylvania's new .10 per se rule and Pennsylvania for years provided that juries would be told that if blood alcohol exceeded .10 there was a presumption of being under the influence. This presumption, of course, was not absolute.

Our research discloses uniform acceptance by other states of the constitutionality of such a provision. See State v. Hazma, (Fla.) 342 S.2d 80.

Of interest is that some states, under a similar statutory provision, permit a defendant to be convicted of both driving under the influence while impaired and driving with a .10 blood alcohol content. Other states consider the one count to be lesser included in the other. See the cases annotated in 16. A.L.R. 3d 748 et seq.

It is clear that alcohol in one's blood stream has an effect on the human body. Indeed, if it did not, it is not likely it would be imbibed. Scientific evidence abounds on the actual effect on the body and it is certainly true that different individuals react in different ways depending on many factors. However, we think it is beyond dispute that anyone with a blood alcohol content of .10 or higher is seriously affected by alcohol. He is indeed affected, or at least

the probability sufficiently exists to give the legislature legitimate reason to make it a crime.

We note some recent question concurring the accuracy of certain breath testing machines. Naturally, an inaccurate reading would be a serius problem under these amendments. This is an evidentiary concern, however, which will be properly addressed at each trial. Initially, the judge will exclude test evidence if legally sufficient ground work is not laid and juries will always have to pass on weight and credibility of test evidence. We note also that the defendant may request a test by his personal physician. Parenthetically, we note that to be guilty of driving under the influence simply by having a .10 blood alcohol reading under 3731(a)(4) alone will not serve as the basis for a conviction of homicide by vehicle while under the influence under Section 3732. This is for the reason that the violation of Section 3731 must be the cause of the death.

We are satisfied that the per se rule is valid.

## LIMITATION ON DISTRICT JUSTICE

Section 3731(f) provides that the district justice ". . . shall not reduce or modify the original charges." It is suggested this rule violates separation of powers and forces the district justice to bind over cases for which a prima facie case has not been made out.

We are not substantially concerned about this provision. Under Rule 140 of the Rules of Criminal Procedure, there is no right in the district justice to change, at preliminary hearing, any of the charges. Further, at preliminary hearing, the district justice's task is only to look for the existence or nonexistence of a prima facie case. If there is a prima facie case, the rules direct that the case be returned

to court for trial. By the same token, if a prima facie case is not found, the charge is to be dismissed.

While Rule 145 provides for disposition of criminal charges by settlement under certain circumstances, that rule is basically designed to effect civil compromises between affected individuals so that substantial justice is achieved and the parties achieve mutual satisfaction.

A possible effect of (f) is to make it clear that the legislature considers its peace and dignity to be adversely affected by a violation of these amendments. The Commonwealth is clearly an affected or aggrieved party. It has directed by this legislation that it does not want cases of this nature settled except by full and complete judicial proceedings. Since the Commonwealth, an affected party, is not willing to agree to a settlement, just as an aggrieved individual may well not be willing to agree to such a settlement, the authority of the district justice to do anything but simply look for the existence of a prima facie case is non-existent.

We do not see this statute conflicting with the Supreme Court Rules on the subject and find the statute to be entirely consistent with standard pre-trial procedures. Accordingly, we will find no infirmity with (f).

## OFFENSES UNDER PRE-AMENDMENT LEGISLATION

The defense suggests that it would be improper for the court to consider pre-January 14, 1983, offenses in applying the mandatory provisions of these amendments. Certainly, pre-amendment offenses will be considered by a sentencing court in imposing a sentence for a current violation. The right of a court in this regard is not disputed by the

defense. In fact, the defense points out that such a consideration would be well within the court's discretionary power.

Defense suggests that the prohibition against ex post facto legislation and due process considerations make the enhancement provision of this act unconstitutional. Those charged with driving under the influence offenses prior to January 14, 1983, were not faced with mandatory sentencing provisions. Nor were those persons in a position to know that a conviction then would be resurrected later in the event of another conviction and trigger a mandatory disposition. They certainly were aware that a second offense would be considered and that consideration was not likely to result in favorable consideration.

In Commonwealth v. Clipper, 303 Pa. Super. 385, 449 A.2d 741 (1982), the Superior Court refused to count convictions of shoplifting under the 1939 Code in order to enhance the penalty under the "retail theft" section of the Crimes Code. It based its reasoning on principles of statutory construction. It could not infer a legislative intent to enhance because the legislature used the new term "retail theft" rather than "shoplifting" without specifically indicating they were substantially the same term. We believe, had the legislature entitled the retail theft section "shoplifting", Clipper would have been decided otherwise.

Dispositive of this issue, we believe, is Commonwealth v. Shade, 7 D.&C.3d 240 (1977), wherein the Lancaster County Court permitted a retail theft conviction to be enhanced by a shoplifting conviction stating principles of law we believe to be valid and which were not invalidated by the Clipper deci-

sion. It is clear, however, that the Clipper court would probably have reversed the Shade court.

In any event, Shade pointed out that the retail theft section and the shoplifting section were substantially similar in their elements and what they were designed to prevent. It also, correctly we think, stated

" '. . . In order to authorize the infliction of a more severe penalty on conviction for a second or subsequent offense, it is not necessary that the first conviction . . . should have occurred subsequent to the enactment of the statute or the amendment thereof.' "

See also Sphaler v. Colman, (Fla.), 379 So. 2d 717 (1980).

In the present case, the section under which defendant in this matter was charged reads precisely the same as subsection (a)(1) of the present act. In fact, the new amendments do not alter this subsection of the 1977 Act.

We therefore, find nothing impermissible about the enhancement provisions of the amendments.

### ORDER

And now, March 18, 1983, for the reasons set forth in the within opinion, we find defendant's challenge to the constitutionality of the amendments to Pennsylvania's Motor Vehicle Code to be without merit. Accordingly, it is ordered and directed that defendant's pre-trial application be and is hereby dismissed.